## ABRAHAM, Ex'r, v. AMERICAN NAT. BANK.

No. 20970. Opinion Filed June 7, 1932.

Rehearing Dtnied Dec. 27, 1932.

Herbert Abraham, for plaintiff in error.

Hughes & Ellinghausen, for defendant in error.

HEFNER, J. This action was begun in the district court of Creek county by Louis Abraham, executor of the estate of Joe Abraham, deceased, against the American National Bank, of Sapulpa, Okla., to de-

termine priority of liens claimed by the parties on certain garage tools and accessories which belonged to Jucksch Garage Company.

Plaintiff claimed a lien against the property for the nonpayment of rent in the sum of $1,425 under and by virtue of the provisions of a written lease contract. Defendant claimed a lien under a chattel mortgage given to secure a note in the sum of $4,600. The property involved was sold by agreement of the parties for the sum of $2,000 and the proceeds deposited with the court clerk to await the judgment of the court.

The cause was submitted to the court on an agreed statement of facts and resulted in a judgment in favor of defendant. The court held its lien superior to that of plaintiff. and entered a decree ordering the payment of the funds deposited in court to defendant.

The parties entered into a stipulation which, among other things, provided that on the 1st day of February, 1928, plaintiff leased to the garage company, under a written contract, certain premises located in the city of Sapulpa; that the lease provided plaintiff should have a lien on all property installed by lessee and used in or about the leased premises to secure the payment of rents. Plaintiff's lease contract was recorded on February 10, 1928, as an instrument affecting real estate, and, immediately after being recorded, was returned to him. No copy of the lease was at that time left on file in the office of the county clerk, but thereafter, and on September 25, 1928, the original lease was filed with him as a chattel mortgage and properly indexed. It is further stipulated that on and after June 13, 1928, the garage company was indebted to defendant in the sum of $4,600 on two promissory notes. one in the sum of $3,600 due May 30, 1928, and one for $1,200 due June 11, 1928; and on June 13, 1928, the garage company executed to defendant. in lieu of the two past due notes, a renewal note for $4,600 due and payable on September 11, 1928. and in order to secure the payment thereof executed a chattel mortgage on the property here involved. Defendant duly filed the chattel mortgage in the office of the county clerk on June 14, 1928, and the same was properly indexed. Defendant had no actual knowledge that plaintiff claimed a lien against the property under its lease contract.

Plaintiff contends that because he deposited his lease contract with the county clerk, prior to the execution of defendant's chattel mortgage, such deposit was sufficient to impart notice thereof to third parties, and that he cannot be compelled to suffer loss because of the negligence of the county clerk to properly file and index the instrument as a chattel mortgage. In support of this contention, he cites the case of Dabney v. Hathaway, 51 Okla. 658, 152 P. 77. It is there said:

"Under section 4031, Rev. Laws 1910, which makes a chattel mortgage void as against creditors of the mortgagor, and subsequent purchasers and incumbrancers of the property for value, unless the mortgage 'be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated.' held, that the mortgagee has done all the law requires of him when he has filed the mortgage by depositing it in the office of the register of deeds; and, if the instrument is not then properly recorded, and indexed, it is the fault of the register of deeds, and the mortgagee will not lose his rights, nor be made to suffer by reason of the laches of the register of deeds."

We think the above case inapplicable to the facts here involved. In the cited case. the instrument discussed was nothing but a chattel mortgage, and, upon its deposit in the office of the register of deeds, it was his duty under the law to properly file and index it in the manner provided by law. The mortgagee did all that was required of him under the law when he deposited the instrument in the proper office for filing. The court held. under those circumstances. that he could not be held liable because of the negligence of the register of deeds in failing to properly file and index the instrument. In the instant case, the instrument was one affecting both real and personal property. It consisted. in the main, of an instrument conveying an interest in real estate, and it was therefore the duty of the clerk to record it as such. He did so record it and immediately returned it to plaintiff. It was held by plaintiff until September 25, 1928, and until after the filing of defendant's mortgage, at which time it was filed by him in the office of the county clerk as a chattel mortgage. Plaintiff had ample time after return of his lease contract—and prior to the execution of defendant's mortgage—to have filed the same as a chattel mortgage. He failed to do so. He also failed to advise the county clerk that. in addition to having the instrument recorded as one affecting real estate, he also desired it filed as a chattel mortgage. Under these circumstances, it cannot be said that the failure to file the instrument as a chattel mortgage was due solely to the negligence of the county clerk.

In the case of Bonneviere v. Cole (Wash.) 156 P. 527, that court said:

"Under sections 3661, 3668, chattel mortgages must be recorded or indexed in books kept exclusively for that purpose, and the inclusion of chattels in a real estate mortgage and the recording of such instrument in the records of real estate mortgages does not afford constructive notice of any lien upon the personal property and is void as to subsequent creditors."

The recording of the instrument here involved as one affecting real estate was insufficient to impart notice to third parties that plaintiff had a lien against the property.

Plaintiff urges that his lien is superior to defendant's chattel mortgage for the reason that defendant, under the agreed statement of facts, is not an incumbrancer for value. In this connection it is argued that defendant's mortgage was taken to secure a pre-existing debt and he is therefore not an incumbrancer for value within the meaning of the recording act. It is stipulated that the note in question was given to renew two old notes then past due and that the time. of payment was extended by the renewal note, and the chattel mortgage was given to secure the renewal note. Under these facts, defendant is an incumbrancer for value within the meaning of the recording act. Hudson-Houston Lbr. Co. v. First State Bank, 132 Okla. 125, 269 P. 1054.

Plaintiff also contends that defendant's mortgage is void as to it for the reason that it is not properly executed. It is executed for and on behalf of the corporation by Frank Jucksch. It was stipulated that he had been president and general manager and in the sole and exclusive control of the business of the corporation since June 15, 1925. Under this stipulation, he had authority to execute the mortgage. Natl. Surety Co. v. Wingate, 153 Okla. 132, 5 P. (2d) 376.

It was stipulated that, at the time of the execution of defendant's mortgage, it had knowledge that the relationship of landlord and tenant existed between plaintiff and the garage company. It is plaintiff's contention that because of this knowledge defendant is chargeable with notice and knowledge of the lien created in favor of plaintiff by the terms of the lease contract. We do not agree with this contention. The mere fact that defendant knew of the relationship which existed between plaintiff and his lessee is insufficient to charge it with knowledge that plaintiff claimed a lien or held a chattel mortgage against the personal property used in connection with the business of lessee.

The trial court was correct in holding defendant's mortgage lien superior to the lien of plaintiff under his lease contract.

The judgment is affirmed.

RILEY, CULLISON, ANDREWS, McNEILL, and KORNEGAY, JJ. concur. LESTER, C. J., CLARK, V. C. J., and SWINDALL, J., absent.

---

On Rehearing.

KORNEGAY, J. (dissenting). An inspection of the record shows that this was an agreed case. It appears therefrom that the executor of the estate of Joe Abraham, deceased, had executed a lease to the Jucksch Garage Company, Inc., and Frank Jucksch, as party of the second part, of a brick building in the city of Sapulpa, used as an automobile repair shop, for a term of 4 years, in consideration of $16,800 to be paid $350 on the 1st day of February, 1928, and like payment on the 1st of each month thereafter until the full amount is paid, the rent to be paid in advance, with covenant against subletting or subleasing without written consent, with a clause, as follows:

"It is further agreed between the parties hereto that the party of the first part shall have a lien on any and all property installed and used on or about said premises for any and all sums of money that may be due or become due him by virtue of any of the terms, conditions and provisions of this contract, and in the event the first party shall resort to the courts of law or equity for the purpose of collecting any rentals due hereunder or availing himself of any of his rights hereunder and shall recover judgment, then in addition to the cost carried by said judgment, party of the first part shall be entitled to a judgment for a reasonable attorney's fee as a part of the costs of said action, the same to be fixed by the court or the judge thereof wherein said judgment was had."

There were other covenants on the part of the lessee, with the right in the landlord to resume possession and to relet at the best rent that could be obtained for the tenant, who should make good any deficiency, with a clause that agreements therein contained should bind the heirs, executors, administrators and assigns. That lease, executed by the Jucksch Garage Co., Inc., was acknowledged by Frank Jucksch as president of the company and also by the grantor, and was properly recorded.

The chattel mortgage was signed, covering the "Jucksch Garage by Frank Jucksch," in presence of C. L. Whiteside and G. G. Thomas, but it does not appear to have been acknowledged and the record leaves in

doubt whether or not the persons, in whose presence it was signed, signed as witnesses. Section 11283, O. S. 1931, is as follows:

"A mortgage of personal property must be signed by the mortgagor. Such signature may either be attested by acknowledgment before any person authorized to take acknowledgments of deeds, or it may be signed and validated by the signature of two persons not interested therein. Mortgages signed in the presence of two witnesses or acknowledged before an officer as herein provided, shall be duly admitted of record."

The stipulations 10, 11, 12, 13, 14, and 15 are as follows:

"10. It is further stipulated and agreed that Frank Jucksch has at all times owned the majority of the stock of Jucksch Garage, a corporation.

"11. It is further stipulated and agreed that the said corporation sometimes uses the name 'Jucksch Garage' on their stationery, and sometimes the name 'Jucksch Garage, Inc.'

"12. It is further stipulated and agreed that the by-laws of said corporation, among other things, provides that the president shall sign all written contracts of the corporation, and that the secretary shall attest with his signature and impress the corporate seal on all written contracts of the corporation; that said by-laws were adopted at the first meeting of the directors of said corporation held on the 20th day of February, 1918.

"13. It is further stipulated and agreed that the American National Bank had no actual knowledge of the by-laws of the said corporation or any of the provisions thereof.

"14. It is further stipulated and agreed that the American National Bank had actual knowledge of the existence of the relationship of landlord and tenant between the said Louis Abraham, executor, and the said Jucksch Garage at the time said chattel mortgage of the American National Bank was given, on the 13th day of June, 1928.

"15. It is further stipulated and agreed that the said American National Bank had no actual knowledge of the contents and provisions of the said lease contract."

There was a stipulation that the property embraced in the mortgage was the same as that embraced in the lease contract.

I have examined the opinion in the case, and it seems to follow a case from Washington and to depart from the cases from our own court and our own statutes. The case relied upon from Washington is Bonneviere v. Cole, 156 Pac. 527. That, however, is on a special statute in Washington requiring a special book for the recording of chattel mortgages, and while the statute is not thoroughly filled out in the quotation, there is enough in that case to indicate the danger of here following the judicial pronouncement therein contained. The case of Dunsmuir v. Port Angeles Gas, etc., Co. (Wash.) 63 Pac. 1095, cited therein, throws more light on it than the case cited and relied on. At page 1097 the argument is given in the case, and at 1098 the court says:

"Our statute provides that a mortgage of personal property is void as against creditors of the mortgagors or subsequent purchasers and incumbrancers of the property for value and in good faith, unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, delay, or defraud creditors, and is acknowledged and recorded in the same manner as is required by law in conveyance of real property. 1 Hill's Code, sec. 1648; Ballinger's Ann. Codes & St., sec. 4558. And it is further provided that such mortgages must be recorded in the office of the county auditor of the county in which the property is situated, in a book kept exclusively for that purpose. 1 Hill's Code, sec. 1649; Ballinger's Ann. Codes & St., sec. 4559. The respondent's mortgage, it is conceded, was recorded in the records of real estate mortgages only; and if, as appellant contends, it is a mortgage of personal property, the record imparted no notice to appellant, and it will not be necessary to determine any question other than that presented by the third assignment of error. It is a rule almost without exception that a mortgage or other instrument which is entitled to registration must, in order to be effective as notice to third persons, be recorded in the book prescribed by law."

The question here should be determined by our statutes, and by our decisions, as I view it. So far as the execution of the mortgage relied on by the bank is concerned, it does not appear to me that it was executed by the proper party or in the proper manner. The stipulation provides that since the 15th of June, 1925, Jucksch had been "president and general manager" and in sole and exclusive charge and control of all business of the Jucksch Garage, Inc. It is clear that as between the parties this stipulation in the lease should be held good.

Reliance is placed, according to the opinion, by the landlord upon Dabney v. Hathaway, 51 Okla. 658, 152 P. 77, but the court says it is not applicable. It occurs to me, upon examining in the light of the statutes, and especially in view of the case of Nicholson v. Peoples Nat. Bank of Checotah. 119 Okla. 113, 249 P. 336, which sets out the various statutes and undertakes to classify the different kinds of property that we have, and especially section 5252, C. O. S.

1921 [O. S. 1931, sec. 9673], which is as follows:

"Every conveyance of real property acknowledged or approved, certified, and recorded, as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors"

—that when the lease in this case was recorded, it became notice to every creditor dealing with the subject-matter connected therewith, and called his attention to the lease and its terms and the method of securing the compensation to the landlord. As to whether or not the clerk was under obligations to record this instrument in the manner prescribed by law, the case of Smith v. Ray, 119 Okla. 145, 249 P. 373, comes nearer being in point than the Washington case, as I view it.

In that case the question arose as to whether or not the purchaser from the landlord, without notice of the lease being fully paid, was bound, though the purchaser had gotten an abstract in which the lease did not appear, owing to a mistake having been made in the recording. The court says:

"A man who knows that another is in possession of lands through tenants, as was plaintiff in the instant case, and who is further advised that the evidence of the rightfulness of that possession is a matter of record, is charged with notice of all that the records show, and if he thereafter buys such lands in reliance on a defective or incomplete abstract, he does so at his own risk and in peril of the consequences. Edwards et al. v. Montgomery et al., 26 Okla. 862, 110 P. 779."

As applied to the present case, the mortgage taken by the bank was merely on a renewal of paper. It was not taken pursuant to the ordinary resolutions required by the by-laws of the corporation. It was taken on property located in a building that was leased by the mortgagor, location properly described, and that any person was bound to know was not leased gratis. It covered "all furniture, fixtures, machinery and equipment used in connection with the said Jucksch Garage and to cover all substitutions or additions of furniture, fixtures, machinery and equipment that might be purchased for use of said garage." The description of property covered fixtures and machinery mostly.

Our recording law, with reference to that which is purely a chattel mortgage, with its ordinary terms of grantor and grantee, a thing granted described expressly perhaps may be special as to the manner of getting it on record, but we generally recognize that constructive notice by record is not any better than actual notice under our system, though under the system we had at one time, on the East side, actual notice would not prevail over filing in the manner prescribed by the statute. A form of chattel mortgage is set out in section 11271, O. S. 1931.

As applied to the present case, the foundation of the security was a debt for rent of real estate, a lease contract being entered into by the parties regularly acknowledged and placed on record. That was a conveyance on terms that the landlord should have a lien for the rent upon the property of the tenant on the demised premises, and it seems to me that when the statute provides for the recording of the lease, which would naturally have to be in the manner prescribed by the statute, and indexing it, that it was the duty of the bank, both for an original loan or a renewal, to have inquired as to the condition under which the fixtures attached to the building were being held, which would have led to knowledge of the whole thing. A lease of land is ordinarily classed as a chattel real. The statutes governing are as follows:

"9671 (O. S. 1931). Term Defined.

"The words 'land,' 'real estate' and 'premises,' 'when used herein or in any instrument relating to real property, are synonyms and shall be deemed to mean the same thing, and unless otherwise qualified, to include lands, tenements and hereditaments; and the word 'appurtenances,' unless otherwise qualified, shall mean all improvements and every right of whatever character pertaining to the premises described."

"9672. Effect of Recording.

"Except as hereinafter provided, no acknowledgment or recording shall be necessary to the validity of any deed, mortgage or contract relating to real estate as between the parties thereto; but no deed, mortgage, contract, bond, lease or other instrument relating to real estate, other than a lease for a period not exceeding one year and accompanied by actual possession, shall be valid as against third persons unless acknowledged and recorded as herein provided."

"9673. Record is Constructive Notice.

"Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, incumbrancers or creditors."

I think a rehearing should be granted in this case, and that the case should be de-

cided the other way, and the landlord protected.

Note.—See under (2) 5 R. C. L. 449; R. C. L. Perm. Supp. p. 1393. (3) 7 R. C. L. 645.